MARTIN SMITH v. THE CITY OF LEAVENWORTH.

15   81
52   326
53   763

15   81
65   688

1. STREETS IN CITIES; *Fee in County.* The fee of all streets, (including that portion of the same on which the sidewalk is constructed,) in any city in Kansas, ·is in the county in which such city is situated, for the use and benefit of the public.

2. ———— *Use of Streets, and Sidewalks.* The only legitimate use that can be made of a street or the sidewalk by any private person, is for passing and repassing upon the same. This would probably be different if the private person owned the fee of the land occupied by the street.

3. ———— Any person traveling upon a street has a right to use any portion of the same for that purpose not already otherwise in use.

4. ———— *Right of Lot-Owner.* A lot-owner, or any person under him, has a right to use any portion of a street in front of his lot in passing to or from his lot, and to and from the improvements on the same, including the house, cellar, etc.

5. ———— *Powers of City.* Under existing laws no city has any power to confer upon any private person any right to use a street, or any portion of the same, for the purpose of a cellar-way or for any other purpose except for passing and repassing.

6. ———— *Sidewalks; Duty of City.* It is the duty of a city to keep its sidewalks in good repair, and in such condition as to make them safe for the traveling public.

7. ——·—— *Negligence of City.* It is negligence for a city to allow a cellar-way to be made and left open in a street where persons are in the·habit of traveling.

8. ———— A city is not liable for negligence which does not result in the injury of any person; and in order to make a city liable for negligence, the negligence must still be operating when the injury · occurs.

9. ·———— While the use of any portion of a street for a private cellar-way is unauthorized by law, yet if the cellar-way were so guarded as to be perfectly safe under all ordinary circumstances for persons traveling upon such streets, the city would not be so guilty of negligence, in such a case, as to be liable for some unforeseen injury resulting from some fortuitous circumstance, which could not, in the ordinary course of events, be expected or anticipated as likely to occur.

10. ———— *Liability of City for Negligence.* Where a city permits a cellar-way to be constructed in the sidewalk of one of its principal streets, which cellar-way is not guarded in any manner except by a

trap-door, and is dangerous for persons traveling on said sidewalk when said trap-door is not closed, and when said city permits the person occupying the adjoining lot, and those acting under him, to open and close said trap-door at their option, the city is liable for any injury that may occur by reason of any person falling, without fault on his part, into said cellar-way, when said trap-door is left open.

*Error from Leavenworth District Court.*

ACTION by *Smith* to recover damages for injuries sustained by him by reason of his falling into an open cellar-way on one of the streets of the *City of Leavenworth*. Trial at the February Term 1874 of the district court. The facts were found and stated in a special verdict, which is quoted in full in the opinion, *infra*. Upon the facts so found, the district court gave judgment in favor of the defendant, and *Smith*, plaintiff, appeals, and brings the case here on error for review.

*F. P. Fitzwilliam*, and *L. G. Hopkins*, for plaintiff:

The city had full control over the sidewalks, freed from all obstructions, and authority to prevent and remove nuisances: City Charter, Gen. Stat., ch. 18, §§ 19, 21, 9. The city had notice of the defect in the sidewalk, that it was unguarded, and dangerous for foot passengers. It made no attempt to protect any one traveling thereon from falling in. Therefore, for neglecting its duty in keeping the sidewalk in a safe condition for travelers, it rendered itself liable to plaintiff for the injury by him received: 9 Kas. 550; 5 Kas. 311; 2 Black, 418, 590; 45 Mo. 449; 39 Barb. 329; 22 Wis. 642; 34 Iowa, 41.

This liability was not changed because Kirch placed a trap-door over the cellar-way one day prior to the injury. This was done for "his own convenience and the protection of his own customers." 45 N.Y. 129. The city was not absolved from the performance of its duties and liabilities to the public, in keeping the sidewalk free from defects and in a safe condition for pedestrians, because an obligation also rested on the owner or occupant of the lot to see that the cellar-way was properly

guarded. The jury finds from the evidence that there was no protection to foot-passengers when the trap door was not down, and that at the time plaintiff was injured there was no guard, and the city had no knowledge of the trap-door being there, and had taken no steps to secure persons passing along the sidewalk at that point from injury. The city is primarily liable to plaintiff for the injury: 29 Iowa, 210; 30 Conn. 118; 65 Barb. 214; 24 Vt. 163; 51 Maine, 313; 48 Penn. St. 320; 29 N. Y. 592; 42 Ill. 503; 14 Minn. 133; 107 Mass. 104.

*Lucien Baker*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Martin Smith against the city of Leavenworth, to recover for injuries received by the plaintiff by reason of a defective sidewalk in said city. The facts of the case, as shown by the special verdict of the jury, are as follows:

*First:* The defendant is a municipal corporation, a city of the first class, duly organized and existing under the laws of the state of Kansas, and as such has the charge and control of the public streets within the limits of the city.

*Second:* Shawnee street is a public street of said corporation, graded, curbed, guttered, macadamized, and sidewalked ten feet in width, by said corporation.

*Third:* On the north side of said street was erected in 1868 a building on lot 9, in block 50. In front of said building was a cellar-way, which extended into the cellar by steps, six feet deep.

*Fourth:* From the erection of said building until the second day of May 1873, said cellar-way was unprotected, and several citizens fell therein.

*Fifth:* On the evening of the 3d of May 1873, between the hours of seven and eight o'clock, the plaintiff, in going from his residence to his place of business, using ordinary care, and without any fault on his part, accidentally fell into said cellar-way.

*Sixth:* On the 2d day of May 1873, John Kirch, who was a tenant in possession of said building, caused a trap-door to be put over said cellar-way. On the 3d day of May said

trap-door had been repeatedly shut and opened before said accident. But there was no protection to said cellar-way when said door was not down. The defendant, the city, did not know of the fact that Kirch had caused said door to be made and put down until after the injury to the plaintiff. The cellar, to which said opening or cellar-way is, was rented and used by a number of hucksters, dealing on the sidewalk near by. When said door was down over the cellar-way it sufficiently protected the same. At the time of the accident to the plaintiff it had been up from twenty to thirty minutes. Mr. Kirch put down the door for his own convenience, and the protection of his customers.

*Seventh:* The corporation defendant had full notice of the existence of said opening or cellar-way from the time of the erection of said building, and of the condition it was in. But the defendant did not know that said trap-door had been put down by Kirch.

*Eighth:* From said fall the plaintiff sustained a fracture of his left arm, near the wrist, whereby he was confined to his house for three weeks, and was rendered unfit to attend to his business for over three months, and had to employ assistance to attend to his business while so disabled, and had to employ physicians, and incur expenditures for medical attention.

*Ninth:* We, the jury, find, if the above facts are sustained by the court, the plaintiff is entitled to recover $650 damages.

The only question involved in this case, as we think, is, whether the plaintiff ought to recover upon the foregoing facts. It is true, the plaintiff suggests some other matters, but we hardly suppose he expects a reversal of the judgment below on account of them. For instance, he asked the court below to instruct the jury to make the following additional findings of fact, to-wit: "That the defendant was guilty of negligence in permitting said opening to be made, and to remain in said sidewalk;" "That the defendant was guilty of negligence in omitting to have said opening properly guarded;" "That said opening never had been and was not at the time of the injury to said plaintiff properly and sufficiently guarded." The court refused. He assigned this refusal for error. He mentions the same in his

statement of facts in his brief, but afterward he does not even mention the matter. There are several reasons why we should not reverse the judgment of the court below on account of its rulings in this last-mentioned matter: 1st.–The plaintiff asked the court orally, and not in writing, to instruct the jury to make said additional findings. 2d.–When he made the request it would seem that the jury had already been out for some time considering as to what their verdict should be, and had not yet returned into court with their verdict. 3d.–He asked that the court should instruct the jury to find a particular way, and did not propose to allow the jury to exercise any judgment or discretion in the matter. 4th.–He made no objection to the verdict at the time the same was rendered because it did not contain these additional findings, but on the contrary, he seemed to be satisfied with the verdict without these findings. When the jury returned their verdict into court, the court below said to the plaintiff, "Are there any exceptions on the part of the plaintiff?" The plaintiff then made some suggestions, (not mentioning however these additional findings,) and the verdict was amended in accordance with his suggestions. The court then said, "Is there anything further by the plaintiff?" and the plaintiff answered, "No, sir." 5th.–The plaintiff seems finally to have abandoned the matter, for he has not mentioned the same in the argument in his brief.

We now return to the real question in the case, which is, which party should recover upon the facts found by the jury, the plaintiff, or the defendant? This is a difficult question to solve. It seems to be new. There is no case to be found in the books precisely like it; and different minds might reach different conclusions with reference thereto. We suppose however that the following propositions will be conceded to be good law: 1st.–The fee of all streets, including that portion of the same on which the sidewalk is constructed, in any city in Kansas, is in the county in which such city is situated, for the use and benefit of the public. (*Randal v. Elder*, 12 Kas. 257, 261, and cases there cited.) 2d.–The only legiti-

mate use that can be made of a street, or the sidewalk, by any private person, is for passing and repassing upon the same. This would probably be different if the private person owned the fee of the land occupied by the street. 3d.–Any person traveling upon a street, has a right to use any portion of the same for that purpose not already otherwise in use. 4th.–A lot-owner, or any person under him, has a right to use any portion of a street in front of his lot in passing to or from his lot, and to and from the improvements on the same, including the house, cellar, etc. 5th.–Under existing laws, no city has any power to confer upon any private person any right to use a street, or any portion of the same, for the purpose of a cellar-way, or for any other purpose except for passing and repassing. 6th.–It is the duty of a city to keep its sidewalks in good repair, and in such condition as to make them safe for the traveling public. 7th.–It is negligence for a city to allow a cellar-way to be made and left open in a street where persons are in the habit of traveling. 8th.–A city is not liable for negligence which does not result in the injury of any person. And in order to make a city liable for negligence, the negligence must still be operating when the injury occurs. 9th.–While the use of any portion of a street for a private cellar-way is unauthorized by law, yet, if the cellar-way were so guarded as to be perfectly safe, under all ordinary circumstances, for persons traveling upon such street, the city would not be so guilty of negligence, in such a case, as to be liable for some unforeseen injury, resulting from some fortuitous circumstance, which could not in the ordinary course of events be expected or anticipated as likely to occur.

We therefore conclude, that, where a city permits a cellar-way to be constructed in the sidewalk of one of its principal streets, which cellar-way is not guarded in any manner except by a trap-door, and is dangerous for persons traveling on said sidewalk when said trap-door is not closed, and where said city permits the person occupying the adjoining lot, and those acting under him, to open and close said trap-door at their option, the city is liable for any injury that occurs by reason

of any person falling, without fault on his part, into said cellar-way when said trap-door is left open. The city was unquestionably guilty of negligence, and of gross negligence, in allowing said cellar-way to be constructed and left open without any guard for such a great length of time. And even when the trap-door was put down, the city had no agency in the matter, and no knowledge of the same, and did not even afterward have any knowledge of the same until after the accident occurred. And it will also be noticed, that said trap-door was not put down as a constant and permanent guard for said cellar-way; but it was put down with the unquestioned intention that it should be opened and closed at the option of those using the cellar. Hence, the original negligence of the city, in allowing a dangerous opening to be made in said sidewalk, was not totally terminated and ended by the construction of a guard intended to be constant, permanent and lasting, but such negligence was merely mitigated by the construction of a guard that would sometimes be sufficient, and sometimes not sufficient. The original negligence of the city continued, merely modified and mitigated. And nothing will wholly terminate the negligence of the city except to so close up the cellar-way as to make it permanently and constantly safe for those traveling on the sidewalk.

The judgment of the court below will be reversed, and cause remanded, with the order that the court below render judgment on the special verdict of the jury in favor of the plaintiff and against the defendant, for $650 damages, and costs.

All the Justices concurring.